# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

ANTHONY PARSE and KAYLA
PARSE,

     Plaintiffs,

     v.

BRUNSWICK CELLULOSE, INC.
also known as BRUNSWICK
CELLULOSE, LLC and GERALD
BAKER,

     Defendants.

         CV 215-43

BRUNSWICK CELLULOSE, INC.
also known as BRUNSWICK
CELLULOSE, LLC,

     Third-Party Plaintiff,

     v.

OWENS AND PRIDGEN, INC. and
NATIONAL TRUST INSURANCE
COMPANY,

     Third-Party Defendants.

## ORDER

    Third-Party Defendant National Trust Insurance Company ("National Trust") removed this action to this Court on April 3, 2015. Dkt. No. 1. This matter now comes before the Court on two Motions to Remand separately filed by Defendant/Third-Party

Plaintiff Brunswick Cellulose, Inc., also known as Brunswick Cellulose, LLC ("Brunswick Cellulose") (dkt. no. 13), and Plaintiffs Anthony and Kayla Parse ("Plaintiffs") (dkt. no. 14). National Trust has filed a consolidated Response to the Motions to Remand (dkt. no. 17), and Brunswick Cellulose has filed a Reply thereto (dkt. no. 19). Notably, Defendant Gerald Baker ("Baker") and Third-Party Defendant Owens and Pridgen, Inc. ("OPI") have not weighed in or otherwise taken a position on the issue of remand.

For the reasons that follow, Brunswick Cellulose's Motion to Remand (dkt. no. 13) is **GRANTED in part** and **DENIED in part** as follows: the Motion is **GRANTED** to the extent that it requests a remand of this case to state court, and the Motion is **DENIED** insofar as it seeks to have National Trust pay its costs and expenses, including attorney's fees, incurred as a result of the removal. Additionally, Plaintiffs' Motion to Remand (dkt. no. 14) is **GRANTED** in its entirety.

## BACKGROUND

On September 8, 2014, Plaintiffs filed suit against Brunswick Cellulose and its employee, Baker, in the Superior Court of Glynn County, Georgia. Dkt. No. 1-1, pp. 18-24. Plaintiffs' Complaint alleges that on April 9, 2014, Plaintiff Anthony Parse, an employee of OPI, was injured while performing work at Brunswick Cellulose's pulp mill in Brunswick, Georgia.

AO 72A
(Rev. 8/82)

Id. at p. 19. According to the Complaint, Plaintiff Anthony
Parse was to perform work on a chlorate pipeline at the mill,
pursuant to an agreement between OPI and Brunswick Cellulose.
See id. Plaintiffs seek to hold Brunswick Cellulose and Baker
liable, on the grounds of negligence and premises liability, for
Plaintiff Anthony Parse's injuries, as well as Plaintiff Kayla
Parse's alleged loss of consortium. Id. at pp. 20-22.

Brunswick Cellulose filed an Answer on October 22, 2014,
denying that it or any of its agents acted negligently, and
asserting that the negligence of Plaintiff Anthony Parse—and
perhaps the negligence of other persons or entities for whom
Brunswick Cellulose is not responsible—caused Plaintiff Anthony
Parse's injuries. Id. at pp. 26-32. Shortly thereafter,
Brunswick Cellulose tendered the defense to OPI and its
insurance provider, National Trust. Id. at p. 6. OPI and
National Trust refused to accept the tender. Id. at p. 10.
Accordingly, on February 27, 2015, Brunswick Cellulose filed a
Third-Party Complaint against OPI and National Trust alleging
that they breached their duties to defend and indemnify
Brunswick Cellulose. Id. at pp. 4-14.

Specifically, the Third-Party Complaint claims that
Paragraph 6(a) of the agreement between OPI and Brunswick
Cellulose (the "Master Agreement") imposes a duty upon OPI to

AO 72A
(Rev. 8/82)

"defend, protect, indemnify and hold harmless" Brunswick

Cellulose and its employees

> from and against any and all claims, demands,
> liabilities, lawsuits, causes of
> action . . . and . . . expenses (including, but not
> limited to, attorneys' fees) and costs of every kind
> and character arising out of or in any way incident to
> any of the work performed by [OPI] . . . or the
> employees of [OPI] on account of personal
> injuries . . . regardless of whether such harm is to
> [OPI or its employees].

Id. at pp. 7-8, 10 (alterations in original) (suspension points

in original).[1]  Paragraph 6(a) further provides that an exception

to OPI's contractual duty to indemnify arises if the subject

incident resulted "from the sole (100%) negligence of [Brunswick

Cellulose]." Id. at p. 36.  Additionally, the Third-Party

Complaint states that Paragraphs 6 and 11 of the Master

Agreement require OPI to procure and maintain, at its own

expense, "insurance covering the indemnity provisions" and

"nam[ing] [Brunswick Cellulose] as an additional insured." Id.

at p. 8 (second alteration in original).  The Third-Party

Complaint asserts that OPI purchased a Commercial General

Liability Policy (the "Policy") from National Trust naming

Brunswick Cellulose as an additional insured.  Id.

Brunswick Cellulose claims that National Trust's and OPI's

refusal to defend and indemnify Brunswick Cellulose, when

---

[1]  Brunswick Cellulose attached a copy of the Master Agreement as an
exhibit to the Third-Party Complaint.  See Dkt. No. 1-1, pp. 35-46.

Brunswick Cellulose denies all liability, constitutes a breach of the Policy and Paragraph 6(a) of the Master Agreement, respectively. Id. at pp. 9-11. Brunswick Cellulose also asserts that if it is not covered under the Policy, then OPI has breached its duty to maintain adequate insurance coverage for Brunswick Cellulose under Paragraphs 6 and 11 of the Master Agreement. Id. at p. 11. Thus, Brunswick Cellulose contends that National Trust and OPI are jointly, severally, or individually liable to Brunswick Cellulose for any judgment entered in favor of Plaintiffs. Id. at p. 12.[2]

OPI and National Trust received service of the Third-Party Complaint on March 3, 2015, and March 4, 2015, respectively. Id. at p. 2; Dkt. No. 13-1, p. 3. On April 3, 2015, National Trust removed the action to this Court on the basis of diversity of citizenship. Dkt. No. 1. In the Notice of Removal, National Trust states that Brunswick Cellulose (a resident of Delaware and Georgia) asserts third-party claims that are "separate and independent" from Plaintiffs' tort claims, against National Trust (a resident of Indiana and Florida) and OPI (a Georgia resident) for an amount in excess of $75,000. Id. at ¶¶ 3, 5-7, 14. Although Brunswick Cellulose and OPI are both Georgia

---

[2]  Though not specifically alleged in the Third-Party Complaint, Brunswick Cellulose recognizes in its Motion to Remand that Paragraph 6(a) requires that Brunswick Cellulose establish that the incident at the pulp mill was caused, at least in part, by the negligence of another (such as Plaintiff Anthony Parse, OPI, or an OPI employee), to trigger any indemnity obligation. Dkt. No. 13-1, p. 6.

AO 72A
(Rev. 8/82)

residents, National Trust nevertheless maintains that removal is proper under the fraudulent joinder exception to the complete diversity rule. Id. at ¶ 8. That is, National Trust contends that Brunswick Cellulose joined OPI with National Trust for the sole purpose of destroying complete diversity, as the Third-Party Complaint neither alleges that OPI and National Trust are liable jointly, severally, or in the alternative, nor demonstrates that OPI has any real connection to this case. Id. at ¶¶ 9-13.

On May 4, 2015, Brunswick Cellulose and Plaintiffs separately filed the instant Motions seeking to remand this case to the Superior Court of Glynn County, Georgia. See Dkt. Nos. 13-14. Contemporaneously with the filing of its Motion, Brunswick Cellulose filed a Notice of Intent to Assert Fault pursuant to O.C.G.A. § 51-12-33 against OPI. Dkt. No. 12.

## DISCUSSION

An action filed in state court may be removed to federal district court if the case could have been brought in federal district court originally. See 28 U.S.C. § 1441(a) (requiring that the case be one "of which the district courts of the United States have original jurisdiction"). Upon the removal of an action to federal district court, 28 U.S.C. § 1447(c) ("Section 1447(c)") "implicitly recognizes two bases upon which a district court may . . . order a remand: when there is (1) a lack of

AO 72A
(Rev. 8/82)

subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction." Hernandez v. Seminole Cty., 334 F.3d 1233, 1236-37 (11th Cir. 2003) (quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1252-53 (11th Cir. 1999)).[3]

Relevant here is that a federal district court has original jurisdiction "over all civil actions where the amount in controversy exceeds $[75,000] and the action is between the citizens of different states." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing 28 U.S.C. § 1332(a)(1)). Importantly, "[d]iversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." Id. (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

A "defect other than a lack of subject matter jurisdiction" might include noncompliance with certain procedural requirements for the removal of a case. See Hernandez, 334 F.3d at 1236-37 (quoting Snapper, Inc., 171 F.3d at 1252-53). For example, the

---

[3] Specifically, Section 1447(c) states, in relevant part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

AO 72A
(Rev. 8/82)

"forum-defendant rule" provides that "a state-court action that is otherwise removable to federal court solely on the basis of diversity of citizenship is not removable if any of the 'parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" <u>Goodwin v. Reynolds</u>, 757 F.3d 1216, 1218 (11th Cir. 2014) (emphasis in original) (quoting 28 U.S.C. § 1441(b)). Additionally, the unanimous consent rule states that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

Notably, the doctrine of fraudulent joinder provides an exception to the jurisdictional requirement of complete diversity as well as to the aforementioned procedural requirements. <u>See Triggs</u>, 154 F.3d at 1287 (complete diversity requirement); <u>Jernigan v. Ashland Oil Inc.</u>, 989 F.2d 812, 815 (5th Cir. 1993) (unanimous consent rule); <u>Yount v. Shashek</u>, 472 F. Supp. 2d 1055, 1059 (S.D. Ill. 2006) (forum-defendant rule). Pursuant to this doctrine, a court evaluating whether a jurisdictional or procedural defect warrants remand must not consider the citizenship or consent—whichever applicable—of a nondiverse defendant that has been joined to the action "solely in order to defeat federal diversity jurisdiction." <u>See Stillwell v. Allstate Ins. Co.</u>, 663 F.3d 1329, 1332 (11th Cir. 2011) (citing <u>Henderson v. Wash. Nat'l Ins. Co.</u>, 454 F.3d 1278,

AO 72A
(Rev. 8/82)

1281 (11th Cir. 2006)); see also Triggs, 154 F.3d at 1287; Jernigan, 989 F.2d at 815; Yount, 472 F. Supp. 2d at 1059. In such circumstances, the nondiverse defendant is said to have been "fraudulently joined." Stillwell, 663 F.3d at 1332.

In the case at bar, Brunswick Cellulose and Plaintiffs argue in favor of remand under Section 1447(c) based on the following procedural defects: (1) that OPI is a citizen of Georgia, the forum state, and, therefore, National Trust's removal to this Court violated the forum-defendant rule; and (2) that OPI never consented to removal, as required by the unanimous consent rule. See Dkt. No. 13-1, pp. 10-12; Dkt. No. 14-1, pp. 3-5. Brunswick Cellulose and Plaintiffs contend that the fraudulent joinder exception to these procedural rules is inapplicable here, because Brunswick Cellulose's claims, resulting in the joinder of OPI as a third-party defendant, are meritorious. See Dkt. No. 13-1, pp. 13-20; Dkt. No. 14-1, pp. 5-7. In addition, Brunswick Cellulose requests that the Court order National Trust to pay Brunswick Cellulose's costs and expenses, including attorney's fees, incurred as a result of the removal. Dkt. No. 13-1, p. 20.

In response, National Trust asserts that the unanimous consent and forum-defendant rules are not applicable here, maintaining its position that OPI was fraudulently joined as a third-party defendant for the sole purpose of destroying

AO 72A
(Rev. 8/82)

diversity. Dkt. No. 17, pp. 4–12. National Trust also objects to Brunswick Cellulose's request for payment of costs and expenses, on the basis that its justification for removal was objectively reasonable. Id. at p. 12. National Trust further submits that the Court should (1) sever Plaintiffs' tort claims from Brunswick Cellulose's third-party claims; (2) remand the tort action to state court; and (3) sever or dismiss Brunswick Cellulose's third-party claims against OPI from its third-party action against National Trust in this Court. Id. at pp. 10–12.

As an initial matter, this Court's obligation to remand this case sua sponte if subject-matter jurisdiction is lacking obviates Brunswick Cellulose's and Plaintiffs' arguments for remand based on any procedural defect relating to the forum-defendant rule. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") That is, if, as Brunswick Cellulose and Plaintiffs contend, OPI was properly joined as a third-party defendant in this case, the jurisdictional requirement of complete diversity would not be met, because both OPI and Brunswick Cellulose are citizens of the State of Georgia. See id. § 1332(c)(1) (stating that, for the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of every state in which it is incorporated and of the state in which it has its principal place of business);

AO 72A
(Rev. 8/82)

Dkt. No. 1, ¶¶ 6-7 (asserting that Brunswick Cellulose has its principal place of business in Georgia, and that OPI is incorporated and has its principal place of business in Georgia). Because the forum-defendant rule applies only as a limitation on the removal of an action meeting the complete diversity requirement, see 28 U.S.C. § 1441(b)(2), the forum-defendant rule would not apply as a bar to removal in this case, even accepting Brunswick Cellulose's and Plaintiffs' arguments as true.

Thus, the Court considers here whether remand is proper based on a defect in diversity jurisdiction or a procedural defect relating to the unanimous consent rule. Notably, National Trust concedes that OPI is a Georgia citizen, see dkt. no. 1, ¶ 7, and the record reflects that OPI never affirmatively consented to removal, see id.; see also Scruggs v. Int'l Paper Co., No. CV411-203, 2012 U.S. Dist. LEXIS 190073, at *3 (S.D. Ga. Sept. 28, 2012) (requiring that each defendant "place some affirmative indication of consent in the record"). As such, if OPI is a properly joined party, then remand is required based on both a lack of complete diversity and a lack of unanimous consent. Conversely, if OPI was fraudulently joined to this action, then its citizenship and lack of consent are disregarded, and remand is not warranted on any basis. Accordingly, the Court's ruling on the fraudulent joinder issue

will be determinative of the issue of remand on both jurisdictional and procedural grounds. Thus, the Court will address the fraudulent joinder issue before reaching the parties' ancillary requests regarding severability and costs and expenses of the removal.

## I.    Fraudulent Joinder

The Court of Appeals for the Eleventh Circuit has identified three situations in which joinder is fraudulent: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and (3) "whe[n] a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Triggs, 154 F.3d at 1287 (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1355 (11th Cir. 1996), and Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983)).  The Eleventh Circuit has further determined that the removing party carries the "heavy burden" of proving by clear and convincing evidence that fraudulent joinder has occurred.  Stillwell, 663 F.3d at 1332 (citing Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's

AO 72A
(Rev. 8/82)

right to remove and plaintiff's right to choose his forum are not on equal footing . . . where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

In determining whether a nondiverse defendant has been fraudulently joined, a court must look to "the plaintiff's pleadings at the time of removal." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) (citing Crowe, 113 F.3d at 1538). The court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." Id. (citing Crowe, 113 F.3d at 1538). However, the court is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. at 1380-81 (quoting Crowe, 113 F.3d at 1538).

"[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." Florence v. Crescent Res., LLC, 484 F.3d 1293, 1299 (11th Cir. 2007) (emphasis added) (citing Henderson, 454 F.3d at 1284, and Crowe, 113 F.3d at 1540); see also Pacheco de Perez, 139 F.3d at 1380 (stating that the plaintiff need only state a "colorable claim" against the nondiverse defendant). Unlike the

AO 72A
(Rev. 8/82)

plausibility pleading standard applicable to a motion to dismiss, which asks for more than a mere possibility of unlawful conduct by the defendant, "all that is required to defeat a fraudulent joinder claim is 'a possibility of stating a valid cause of action.'" Stillwell, 663 F.3d at 1333 (quoting Triggs, 154 F.3d at 1287). Thus, the court's "authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." Crowe, 113 F.3d at 1542.

In its Notice of Removal, National Trust cited only the third fraudulent joinder situation as the basis for removing this case on diversity grounds, alleging that there is no joint, several, concurrent, or alternative liability between OPI and National Trust, and that OPI has no real connection to this case. Dkt. No. 1, ¶¶ 9-13. National Trust now asserts that OPI's joinder was fraudulent not only under the third scenario but also under the first—namely, that Brunswick Cellulose cannot possibly prove a cause of action against OPI. Dkt. No. 17, p. 5.

### A. The Possibility of Brunswick Cellulose Proving a Cause of Action Against OPI (Situation One)

National Trust contends that Brunswick Cellulose cannot prove its breach-of-contract claims against OPI on the grounds of either a failure to indemnify and defend, or a failure to

AO 72A
(Rev. 8/82)

procure and maintain adequate insurance coverage, as alleged in the Third-Party Complaint. Id.

### 1. Contractual Indemnity Claim

Under Georgia law, a claim of "indemnity" involves "the obligation or duty resting on one person to make good any loss or damage another has incurred or may incur by acting at his request or for his benefit." Cash v. St. & Trail, Inc., 221 S.E.2d 640, 642 (Ga. Ct. App. 1975) (quoting Copeland v. Beville, 92 S.E.2d 54 (Ga. Ct. App. 1956)). Parties to a contract may validly agree that one party (the indemnitor) will indemnify or "save harmless" the other party (the indemnitee) from claims of third parties, even where the third-party claim is based on the indemnitee's own fault or negligence. Id. (citing Martin v. Am. Optical Co., 184 F.2d 528, 529 (5th Cir. 1950)). While no particular words or talismanic phrasing are necessary, Smith v. Seaboard Coast Line R.R. Co., 639 F.2d 1235, 1239 (5th Cir. 1981), an agreement to indemnify against the indemnitee's own fault or negligence must be set forth in clear and unequivocal terms, George R. Hall, Inc. v. Superior Trucking Co., 532 F. Supp. 985, 993 (N.D. Ga. 1982) (citing Binswanger Glass Co. v. Beers Constr. Co., 234 S.E.2d 363 (Ga. Ct. App. 1977), and Batson-Cook v. Ga. Marble Setting Co., 144 S.E.2d 547 (Ga. Ct. App. 1965)); Cash, 221 S.E.2d at 642.

AO 72A
(Rev. 8/82)

Evaluating the factual allegations in the light most favorable to Brunswick Cellulose as the Third-Party Plaintiff, and resolving all uncertainties about Georgia substantive law in its favor, there is more than a mere possibility that Brunswick Cellulose states a valid cause of action for indemnity against OPI. Brunswick Cellulose alleges in the Third-Party Complaint that OPI agreed in Paragraph 6(a) of the Master Agreement to "defend, protect, indemnify and hold harmless" Brunswick Cellulose and its employees "from and against any and all claims, demands, liabilities, lawsuits, causes of action . . . and . . . expenses" that arise out of "any of the work performed by [OPI] . . . or the employees of [OPI] on account of personal injuries . . . regardless of whether such harm is to [OPI or its employees]." Dkt. No. 1-1, pp. 7-8, 10 (alterations in original) (suspension points in original). Brunswick Cellulose also asserts that OPI breached this agreed-upon duty to defend and indemnify by rejecting Brunswick Cellulose's tender of the defense against Plaintiffs' claims. Id. at pp. 6, 10. Further, Brunswick Cellulose contends that if it is found liable on Plaintiffs' claims, OPI will be obligated to indemnify Brunswick Cellulose for any judgment entered against it, in accordance with Paragraph 6(a) of the Master Agreement. Id. at p. 12.

AO 72A
(Rev. 8/82)

National Trust's arguments to the contrary do not change this result. National Trust cites United Parcel Service, Inc. v. Colt Security Agency, Inc., 676 S.E.2d 22 (Ga. Ct. App. 2009), for its contention that Brunswick Cellulose has no contractual indemnity claim against OPI, because Plaintiffs do not allege that OPI is at fault. Dkt. No. 17, p. 6. However, United Parcel Service, Inc. was factually distinguishable from this case in that the defendant tortfeasor, unlike Brunswick Cellulose, did not contend that entities other than the employee plaintiff were negligent. See United Parcel Serv., Inc., 676 S.E.2d at 24. In addition, National Trust relies on Zaldivar v. Prickett, 762 S.E.2d 166 (Ga. Ct. App. 2014), rev'd, 774 S.E.2d 688 (Ga. 2015), for the proposition that Brunswick Cellulose cannot use the apportionment statute, O.C.G.A. § 51-12-33, to assign fault against OPI on Plaintiffs' claims. Dkt. No. 17, p. 7. As National Trust's counsel recognized at the Motions Hearing, Zaldivar was overturned on appeal, where the Supreme Court of Georgia expressly ruled that the apportionment statute permits a defendant tortfeasor, such as Brunswick Cellulose, to include a plaintiff's employer as a nonparty against whom the fact finder may assign fault. Zaldivar, 774 S.E.2d at 697.

## 2. Claim for Failure to Maintain Insurance

Georgia law also recognizes a claim for breach of a contractual duty to maintain adequate insurance coverage. See,

e.g., Fleetwood v. Wieuca N. Condo. Ass'n, 354 S.E.2d 623, 623 (Ga. Ct. App. 1987). Construing Brunswick Cellulose's factual allegations in its favor, it is possible that a Georgia court could find that Brunswick Cellulose sufficiently states a claim against OPI on this theory. Brunswick Cellulose alleges that Paragraphs 6 and 11 of the Master Agreement require OPI to procure and maintain, at its own expense, "insurance covering the indemnity provisions" and "nam[ing] [Brunswick Cellulose] as an additional insured." Dkt. No. 1-1, p. 8 (second alteration in original). Brunswick Cellulose also avers that OPI purchased the Policy from National Trust, presumably naming Brunswick Cellulose as an additional insured, but that National Trust refused Brunswick Cellulose's tender of the defense. Id. at pp. 6, 8, 10. As such, Brunswick Cellulose claims that if it is not covered under the National Trust Policy, then OPI is in breach of its duty to maintain adequate insurance coverage, and will be obligated to indemnify Brunswick Cellulose if it is found liable to Plaintiffs, pursuant to Paragraphs 6 and 11 of the Master Agreement. Id. at pp. 11–12.

While National Trust argues that Brunswick Cellulose's claim is premature—as the issue of coverage under the Policy has yet to be decided, dkt. no. 17, p. 8—this Court is not tasked with deciding whether Brunswick Cellulose will ultimately succeed on the merits of this claim. Rather, it is sufficient,

AO 72A
(Rev. 8/82)

at this stage, that there is a possibility that Brunswick
Cellulose could prove a cause of action against OPI for breach
of a contractual duty to maintain insurance.

### B. Joint, Several, Concurrent, or Alternative Liability Between OPI and National Trust, and OPI's Connection to the Case (Situation Three)

National Trust argues that the third fraudulent joinder
scenario is present, because Brunswick Cellulose's claims
against National Trust and OPI are based on different contracts
and duties having no common questions of law or fact. Dkt. No.
17, pp. 9-12.

However, even a cursory review of Brunswick Cellulose's
Third-Party Complaint reveals not only that it seeks to hold
National Trust and OPI jointly, severally, or individually
liable for any judgment entered in favor of Plaintiffs, but also
that the claims against the third-party defendants are
interrelated. Brunswick Cellulose claims that the Master
Agreement requires OPI to defend, indemnify, and adequately
insure Brunswick Cellulose against all claims other than those
owing to Brunswick Cellulose's sole negligence, and that OPI
obtained the Policy with National Trust for this purpose. Dkt.
No. 1-1, pp. 7-8, 10, 36. Brunswick Cellulose further alleges
that in rejecting its tender of the defense against Plaintiffs'
claims—for which it denies all liability—OPI and National Trust
breached the Master Agreement and the Policy, respectively. Id.

AO 72A
(Rev. 8/82)

at pp. 9-11. Alternatively, Brunswick Cellulose asserts that if it is not covered under the Policy, such that National Trust is not in breach of any duty, then OPI nevertheless is in breach of its separate duty to maintain adequate insurance coverage for Brunswick Cellulose under the Master Agreement. Id. at p. 11. As such, Brunswick Cellulose submits that National Trust and OPI are jointly, severally, or individually liable to Brunswick Cellulose for any judgment entered against it on Plaintiffs' tort claims. Id. at p. 12.

Accepting these factual allegations as true, Brunswick Cellulose establishes several possible scenarios in which National Trust and OPI could be liable jointly, severally, concurrently, or in the alternative for any judgment entered against Brunswick Cellulose on Plaintiffs' tort claims. For example, Brunswick Cellulose suggests that a ruling in favor of Plaintiffs would trigger not only OPI's duty to indemnify and insure under the Master Agreement, but also National Trust's duty to indemnify under the Policy. In such circumstances, National Trust could be obligated to cover the full amount of any judgment, or National Trust could be required to cover any amount up to the Policy limits, with OPI making up for any deficiency in the insurance coverage, pursuant to its contractual obligations. Alternatively, Brunswick Cellulose asserts that if National Trust owes no duty to Brunswick

AO 72A
(Rev. 8/82)

Cellulose under the Policy, a ruling against Brunswick Cellulose would result in OPI being compelled to fully indemnify Brunswick Cellulose. Thus, while perhaps OPI and National Trust's alleged duties arise out of different contracts, those contractual relationships, duties, and potential liabilities appear to be related and, to a certain extent, mutually dependent.

National Trust implicitly recognizes the relatedness of the third-party claims on at least one key factual issue: "whether the [tort] claims against Brunswick Cellulose fall within the scope of the Policy's additional insured coverage." See Dkt. No. 17, p. 10. While National Trust asserts only that this issue is relevant to Brunswick Cellulose's claims against it, see id., the resolution of this question directly affects the outcome of Brunswick Cellulose's claim against OPI for failure to maintain insurance. Although National Trust argues that "[a] finding of no coverage is not ipso facto proof that OPI breached its contract with Brunswick Cellulose," id. at p. 11, it is enough that the coverage determination has at least some bearing on OPI's obligation to indemnify Brunswick Cellulose.

C. **Conclusion**

Thus, National Trust fails to demonstrate that Brunswick Cellulose fraudulently joined OPI to this action for the sole purpose of defeating diversity jurisdiction. Indeed, this is simply not a case where the Court can conclude, at such an early

AO 72A
(Rev. 8/82)

stage in litigation, that the claims against the nondiverse third-party defendant are "obviously fraudulent or frivolous." See Crowe, 113 F.3d at 1542. For these reasons, National Trust's fraudulent joinder argument fails, and this case is due to be remanded to state court on the grounds of lack of subject-matter jurisdiction and a procedural defect in the removal.

## II.  Severability

National Trust urges the Court to sever Plaintiffs' tort action from Brunswick Cellulose's third-party action and remand the tort action to state court, and to sever Brunswick Cellulose's third-party claims against OPI from those against National Trust or dismiss the third-party claims against OPI entirely. Dkt. No. 17, pp. 10-12. However, the Court finds that the third-party claims are sufficiently related to each other, as well as to the underlying tort action. Therefore, severing these claims into separate lawsuits would be contrary to the interests of justice and judicial efficiency. Thus, notwithstanding National Trust's suggestion, remand is proper as to this action in its entirety.

## III. Costs and Expenses

In its Motion to Remand, Brunswick Cellulose also requests that the Court order National Trust to pay Brunswick Cellulose's costs and expenses, including attorney's fees, resulting from the removal. Dkt. No. 13-1, p. 20. Section 1447(c) states that

"[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Nevertheless, a court may exercise its discretion to award costs and expenses "only where the removing party lacked an objectively reasonable basis for seeking removal." Rae v. Perry, 392 F. App'x 753, 755 (11th Cir. 2010) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). Viewing the Third-Party Complaint and the surrounding circumstances objectively, National Trust had adequate reason to suspect that Brunswick Cellulose might have joined OPI to this action to preclude its removal. While National Trust ultimately fails to prove that fraudulent joinder did, in fact, occur, the Court finds that National Trust's argument to this end is objectively reasonable. Thus, Brunswick Cellulose is not entitled to recover its costs and expenses attributable to the removal from National Trust.

## CONCLUSION

Based on the foregoing, Brunswick Cellulose's Motion to Remand (dkt. no. 13) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to the request for remand, and it is **DENIED** as to the request for payment of Brunswick Cellulose's costs and expenses resulting from the removal. Additionally, Plaintiffs' Motion to Remand (dkt. no. 14) is **GRANTED** in its entirety.

AO 72A
(Rev. 8/82)

The Clerk of Court is hereby **DIRECTED** to **REMAND** this case to the Superior Court of Glynn County, Georgia, for resolution.

**SO ORDERED**, this 14TH day of October, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)